And call our last case of today. Southerland v. Commonwealth of Pennsylvania et al., number 09-2256. Mr. Boyle and Mr. Denning. And I understand that you're also appearing with Ms. Daley and Mr. Rosenberg. The police court. Good morning. Christopher Boyle on behalf of the appellants in this matter, Sergeant James Cotter and Detective Craig Coven from the White Marsh Township Police Department, who along with Chief Eileen Baer are present in the courtroom today, respectfully request to reserve three minutes for a rebuttal argument. That's fine. The matter before the court deals with the murder of Christine Neely in New York, the investigation of the murderer within the Commonwealth of Pennsylvania, and eventually the charging of that individual. In the court below, some are judging. It seems a lot of what this comes down to is whether Southerland was told his right, was told before he gave the false identification that he was under investigation in New York. Is there anything on the record that tells us an answer to that question? There are several places the record tells us that, Your Honor. In the affidavit of probable cause that was before the district justice, in the police reports that were also attached as exhibits to the motion to dismiss and in response to the plaintiff's motion for summary judgment. Can you wait a moment and stop and tell us exactly where in those two documents it says that he was informed that he was the subject of an official violation or an investigation? In the record appendix at pages 48 and 85 and in the plaintiff's amended complaint, which is record appendix 22 and 23, paragraphs 12 through 16. Tell us the language because I'd like to hear it. Okay. The words, you are the subject of an official investigation of violation of the law, were not used by the police officers. What they told Mr. Sutherland, who at the time they believed was using the name Keith Davis, was that they were assisting the Bronx homicide detectives in a death investigation and that is specifically why they were there to speak with him. Okay. So now are you equating that statement with the requirement under the statute that he be informed that he was the subject of an official investigation? Yes, and more importantly, I think that inference can be drawn and that taking the facts in the light most favorable to the officers, that inference can be drawn. Is that a fair inference to be drawn when the statement that you were there with regard to a death investigation could mean any number of things? It could mean you would agree that you might be a witness. It could mean you would agree that you might have some information about someone else. It could mean you were a subject. It could mean you were a target. It could mean anything. What about the first guy, the assistant head screenkeeper, whatever the first guy was? Mr. Young, yes. Mr. Young, Chris Young. I mean, would he assume he was the subject of an investigation? He probably heard roughly the same thing. Would he assume he was the subject of an investigation because these officers called asking about one of his employees? Well, I mean, you know, there's an investigation going on and I'm talking to you. I think if these officers – Does that mean you're a subject? Well, I think if these officers approached any of us or Mr. Young and said that we're assisting in a death investigation, we would ask them who died and what our involvement was. And the plaintiff never did ask that question. The only question he asked was, is there a warrant? Who knows what we'd say, and that's not relevant. The question is what was said to him and whether what you're positing is a reasonable inference. I would say that the language used, that we're here assisting in a death investigation and that's why we're here to speak to you, sir, is sufficient. And that's sufficient for us to draw the inference that he was told he was the – because I'm only going by the statute, which is the only thing we can go by, that he was the subject of an official investigation. At that stage of the proceedings, where it's plaintiff's motion for summary judgment, the officers were entitled to that inference. Where else did you say in the record that that inference would be supported? You mentioned two places. It's in the plaintiff's amended complaint at paragraphs 12 through 16. He states that when the officers – when Detective Coven first approached him, he advised plaintiffs that he was a person of interest that New York police wanted to interview regarding a particular case. He goes on, at this juncture, plaintiff asked if there was a warrant. Then Detective Coven called New York detectives and then said, yeah, he's standing right in front of me, I can do that, and then asked for his identification. In the documents that were drafted by the officers Cotter and – Coven. Coven, thanks. Right, Coven. In the affidavit of probable cause, written either contemporaneously or the next day, they said we're here assisting the New York police investigation or we're here assisting New York police with an investigation. With a death investigation, yes. Say it again now. With a death investigation. Well, I think at one part of the report it said death investigation. At one point it just said investigation. Okay. But both were in the record. Assume that for the portion where death wasn't involved, would you say where death wasn't specifically mentioned, would you say that it also is an instance where it would be reasonable to infer that having heard that he would know that he's the subject of an official investigation or a violation of the law? I think that the entire record has to be considered, and the fact that Christine Neely, the decedent, was the girlfriend of Sean Sutherland who disappeared the day after her murder, who reappeared here under an alias, that the Bronx homicide detectives told the police that this was a person of interest in that homicide, taking all those things together, which were in the record before the district court. Would you take into account Detective Coven's affidavit where he says in paragraph 13 that it's the only iteration that I can think of in the record that Mr. Sutherland was specifically told, but that was later in the proceeding. I think if you look at it. Yes, well, if one takes the affidavit as a chronological order, yes. But there are other places in the record, including the plaintiff's own complaint, where he says he was initially told he was a person of interest. If those words are sufficient to express to him that he's the official subject of investigation, the plaintiff himself pled that they were right up front. Then it becomes a credibility determination as to whether he lied about his identity after that, with the police saying that he did and with Mr. Sutherland saying that he didn't. How can we decide all of this on summary judgment? I'm sorry, Your Honor, one more time. How can we decide all of this on summary judgment? Aren't there disputed issues of material fact? Well, that's the point for these police officers, that there are disputed issues of material fact that should have precluded summary judgment for the plaintiff. But taking reasonable inferences in their favor, the Court should have denied summary judgment to Mr. Sutherland. Also, if I may continue, the Court has no further questions on that. There were several other things. The district justice had these facts before her and set bail on this matter, found that there was probable cause, which is similar to the case that we've cited, Morris v. Dixon. Before you move on, can I just ask you one other thing? Yes, Your Honor. Your adversary pointed out your district court brief. I think it's in the appendix, page 322. You actually admitted that your clients told them that they were subject after the false identification. I mean, how do you square that? Your adversary brought that up. Yes, I square that with the fact that the complete record has in the affidavit in the police reports, in the affidavit of probable cause that was before the district justice and in the police reports, all of which were exhibits before the district court, that he was told he was the subject of an investigation. The pleadings say that he was told he was a person of interest. And the language used is he was told he was a person of interest after he gave the name Sean Sutherland. Those two things are not mutually exclusive. They come up, they tell him that they're there assisting the homicide detectives in the death investigation, and that's why they're speaking to him. If later statements modify that or expand upon that, that doesn't mean that the initial statement is insufficient. And my adversary has pointed to no case law in Pennsylvania that would hold differently. There are no magic words that need to be used by the police to convey this. In fact, the three cases that are cited by the appellee in this case, all common police court cases, two in Lycoming County and one in Burks, and all three of those cases and the only cases cited by either party, or I'm sorry, three of four cases cited by either party, those three cases all involve police not having an underlying investigation. Two of them, a driver of a car was being investigated and the plaintiff was a passenger in the car. They were not being investigated. And third, a police officer lied outright and said there was an investigation when there wasn't. This case is clearly distinguishable. Let me just see if I get this. Your argument is that we should vacate and remand because there was not a critical finding of material fact with respect to what the police officers actually said to Sutherland when they approached him on the golf course. That there was at least a material dispute of fact as to whether the words used by the police officers was sufficient to convey that Mr. Sutherland was the subject of an official investigation and whether the record taken as a whole, taking all the reasonable inferences, all possible inferences in favor of the officers, was sufficient to break the fact. Doesn't that go more to the issue of qualified immunity, whether a reasonable officer would have thought that was good enough under the circumstances to invoke the statute? It's certainly sufficient to support or certainly supports a qualified immunity argument as well. But first and foremost is that summary judgment we believe should be, should have been denied to the plaintiff and the case could be remanded on that basis. On the qualified immunity argument, all of the facts wouldn't appear to reasonable officers in the position of these two officers that what they were doing violated the constitutional right. Let me ask you this question. Yes, Your Honor. You mentioned the complaint earlier. Paragraph 12 of the complaint, indeed, as you said it did, says that the defendant, Kubin, advised the plaintiff that he was a person of interest that New York police wanted to interview regarding a particular case. However, that comes after in the complaint when he represented himself as someone other than Sean Sutherland. Is that not a fact that we should take into account? But the officers in their own pleading point out that the first time Sean Sutherland admits to being Sean Sutherland is when he's asked for the identification, the wallet in his back pocket, and that comes in Paragraph 16 of the amended complaint. Taking the two together and the reasonable inferences therefrom, the officers were entitled to the inference that those two facts came in that order. He was told he was a person of interest, continued to misidentify himself, and then was asked for ID and finally fessed up. It's not the only possible inference, Your Honor, but it is a reasonable inference, and I believe they were entitled to that at that stage of the proceedings. As far as qualified immunity is concerned, it wouldn't appear to these officers asked to assist in this death investigation, told that Sean Sutherland, the boyfriend of the woman who was murdered, is present in their jurisdiction. It wouldn't appear to reasonable officers that it would be inappropriate to hold him until the Bronx detectives arrived. While the arguments regarding the Fourth Amendment claim of the plaintiff certainly support qualified immunity. The officers, I mean, they know they can't hold him unless he has violated, in their perception, some other law, correct? They know that they can hold him for the violation of the law, which they claim occurred the false identification. He lied about his ID. He lied about his ID. And that depends on whether he was told that he was the subject of an official investigation before or after. If he was before, you're fine. There is a reason under Pennsylvania law to arrest him. If it was after, as Judge Fulham notes, you're not in good shape because you can't invoke the Pennsylvania law to arrest him. Well, I would modify that with just one thing, that the officers under these circumstances, even if you accepted taking the facts in the light most favorable to the plaintiff, that he didn't lie about his identity after he was told he was a person of interest. I don't think it would appear to a reasonable officer at that point that these circumstances where they told him up front it's a death investigation, he doesn't ask all the facts that were available. I don't think it would appear to a reasonable officer that he couldn't place the false identification charge against him. Really? Also, the district justice looked at the same facts and decided there was probable cause and set bail. Wasn't that the whole purpose of, was it Wren? Wren was, the question in Wren on an automobile stop was whether if the officer had some other motivation. You had to have a reason to stop him. If you don't have a reason to arrest him here, I mean, you can't just hold him because somebody called from New York and says, hey, we think this guy might be Sean Sutherland and he might have killed his girlfriend. Two separate arguments, though, Your Honor. The first being whether there was sufficient probable cause to arrest him on the state charge, and number two, whether they were entitled to qualified immunity for holding him pending the arrival of the New York detectives. To consider the second question, the qualified immunity question, you have to start taking the facts in the light most favorable to the plaintiff, whereas in the underlying question summary judgment to the plaintiff, the facts must be in the light most favorable to the officers. And I think that's where – I'm now almost putting two and two together. You at one point in your brief made an argument that it was okay to have this arrest under Terry. You don't mean arrest. You mean stop. No. A stop under Terry. Correct. So? It was reasonable for the officers to stop and to investigate. Reasonable for them to believe that criminal activity is afoot? Has been. I don't think Terry applies to this at all. Well, for the original stop, they have information that this male living under an alias is a person of interest in a homicide. That's sufficient to stop and talk to him. Terry's if you think the criminal activity is about to occur or could. I mean, you're saying this person is a person of interest in connection with a prior crime. He's not actually in the process of attempting to kill someone. Right. And plaintiff has pled that they walked up to him to talk to him, asked him who he was in a mere encounter. That they did. They continued to ask him questions. He voluntarily stayed there. He said he was never handcuffed and that he voluntarily accompanied the detectives back to their headquarters. He uses the word voluntarily throughout his pleadings and throughout his motion. He says he went with them. Now he wants to argue that he didn't feel he could leave and if he had said he doesn't want to come, they would have done this or done that. Well, those aren't inferences he's entitled to at that stage. Final question. Yes, Your Honor. On April 7th of this year, the court came out with a second decision. To what extent are we able to consider that? The second decision was on a motion for reconsideration after acquired evidence recordings of Mr. Sutherland from the prison, which he admits he used in alias. But the matter was already before us. I mean, is that, in effect, a matter of another appeal or can it really come up to us on this case? Well, the plaintiff brought that case to the court's attention in attaching that holding to their briefs and, therefore, put it before this court. I would say that I have no objection to it being before this court because the content of the motion for reconsideration brought those facts to light. So because plaintiff has put it before this court, they have waived any objection to it being considered. All right. Let's hear it from Mr. Dunn. Thank you. If you could move the microphone up just a little bit there. Thank you. Thank you. Good morning, Your Honor. May it please the court, my name is Nathan Denning, and I'm appearing as an eligible law student, recently graduated from the University of Pennsylvania, on behalf of Mr. Sutherland under this court's local rule 46.3. With me today are my supervisors, Ezra Rosenberg and Karen Daly, from the Deckert Law Firm who are court-appointed counsel for Mr. Sutherland. All right. Thank you. Pleasure having you here. The Sutherland claims he didn't lie to the officer about who he was. That's right. The officer said he did lie, and before he lied to them they told him that he was the subject of an official investigation. That's like two ships passing in the night. How can this case be decided on summary judgment? Well, I don't think it's right to say that the officer said that before he lied, they told him that he was the subject of an official investigation of a violation of law. They've said that today. But I think counsel said that there is, in the record, statements to that effect. And it seems, I mean, it just sort of hits you between the eyes. There is a material issue of disputed fact. There's no disputed issue of material fact about what was said before Mr. Sutherland provided correct identification. So the officers, and Mr. Sutherland does say this in his pleadings, the officers did say that they had arrived, they had spoken with New York police detectives who were investigating a death, and that was the reason they were speaking with him. And you're saying that's not sufficient to put him on notice that he's the subject of an investigation? That's exactly right. That's exactly right. The statute is clear, and it requires at least two things of the officers. The first thing it requires is that they indicate that they are investigating a violation of law. And the second thing it requires is that they indicate that the person is the subject of that investigation. So it's not sufficient as a matter of law to satisfy that statute for the officers to say, you know, we're here investigating a death, we're assisting New York police in a death investigation, and that's why we're speaking with you. And that's just right in the statute. And, therefore, anything that Mr. Sutherland said, even if we give the benefit of the facts to the officers as to what was said prior to them informing him later that he was the subject of an official investigation. Again, the point being that if the officers told him before they arrested him for false identification that he was the subject of an investigation for a murder, do you agree that if that were the case, they could then arrest him under the Pennsylvania statute? That's correct. That's correct. But, again, I just want to point out that they're saying that they did put into evidence, there was nowhere at all in evidence on the record that they had told him at around 5 p.m. before they arrested him that he was the subject of an investigation in New York. No, that's not correct. What I'm saying is they didn't inform him that he was the subject of an investigation in New York until after he had correctly identified himself, even under their version of the facts. Their version of the facts are that Mr. Sutherland, they approached Mr. Sutherland, they say, we're assisting New York police in a death investigation. That's why we're speaking with you. They asked him his name. He gave the name Keith Davis. They present him with a picture of himself. He continues to give the name Keith Davis and then eventually relents when the officers say, may we look in your wallet. At that point, and even if you look at Detective Cubbin's affidavit, it appears from pages 395 to 396 in the revised appendix. They say, in paragraph 10, I asked Sutherland Davis for identification. He claimed he had none, and I apologize if I can just read this very quickly. As he was obviously carrying a wallet in his pocket, I asked him if he would consent to me looking through it. At this point, after repeatedly claiming he was Keith Davis, he admitted to being Sean Sutherland. Sutherland was told that he was a person of interest in a New York homicide, and then it goes on. Now, what I take Mr. Boyle to be saying here today is that it is the only reasonable inference, or excuse me, the reasonable inference they're entitled to of this affidavit is that this is not chronological. I think what he's saying is that they have evidence they believe creates the disputed issue of fact and that we should vacate and remand. Well, that's correct. They've also argued that, but it's simply not sufficient to say under the statute, you know, we're assisting New York police in a death investigation, and that's why we're speaking with you. And the Pennsylvania cases that we've cited to in our 28J letter make this clear. Now, they're correct. These factual situations are not identical, but the courts of Pennsylvania had said, for example, in Perez, at this point it is important to highlight the fact that the very nature of this statute means that a crime is not committed until a person who's under investigation and is told so provides false identification, excuse me, false identity to police. The same thing in Barnes. Nor had the officer informed him that he was the subject of an investigation. So while we've never argued that the statute requires a particular form of words, it does require information from those officers to the person of interest that they are the subject of some official investigation. What do you believe is on the record as to what the officers said to Sutherland when they approached him at approximately 5 p.m. at the cricket club? I'm sorry. What do we believe is on the record? Yes. What exactly is on the record that was said by the officers? When they approached him, we're assisting New York police in a death investigation. That's the reason we're speaking with you. That's it. That's it. So then the argument then becomes, is that enough to say that you're the subject of an official investigation? Isn't that correct? That's exactly right, and that's not a question for the jury. There really is no fact for the jury to find here because even if the jury goes and finds all the facts in favor of the officers, those facts are legally insufficient. But the judge made a determination that that was a pretext. That's correct. The fact that that was subjective. First of all, you don't analyze this subjectively. You analyze it objectively. What would a reasonable person do, reasonable officer do? I mean, in and of itself, wouldn't that be a reason just to vacate and remand here? No, I don't think that's the case. And while it is clear that Judge Fulham, in his ruling on summary judgment, said he appeared to rely on the idea that the officers' subjective motivations had eviscerated the probable cause, he made clear in his Rule 60 determination that even giving the officers the benefit of all their facts, he was not going to I'll ask you the same question I asked Mr. Boyle. To what extent can we consider that Rule 60 determination? That's a good question, Your Honor, and it's a little unusual because the Rule 60 motion was filed by the officers after the notice of appeal. So it's not clear which court, whether the court had jurisdiction in that case. In any event, it is evidence of how Judge Fulham is likely to rule on a remand without any instruction from this court. He's likely to take those facts and say The problem I have here is that there is just there's so many things that were said on this motion for summary judgment by the judge here that were just flatly contradicted by the record. We've talked about whether there is a material issue of fact as to the timing as to when they told him he was the subject of an official investigation. But, for example, the judge's district court said According to the defendants, Sutherland did not initially admit he was Sean Sutherland but when asked for identification, produced a Texas driver license in the name of Sean Sutherland. But Sutherland didn't produce a driver's license from Texas. He merely claimed he had one. Isn't that correct? That's correct. And it appears that Judge Fulham recognized that mistake by the time that he issued his order on the Rule 60 motion, acknowledging that even if Sutherland had provided false identification, that the timing is just not right, that the officers hadn't said what they needed to say as a prerequisite to that charge. And no reasonable Excuse me. Go ahead. No, go ahead. And no reasonable officer could have concluded on those facts that they had satisfied the requirements of a charge under the statute. In fact, the officers do. They concede this in their briefing to the district court. And this is at revised appendix 322. After plaintiff was identified by the officers, the detectives informed him that he was a person of interest that New York police wanted to interview. It didn't occur until after they had already positively identified him. So, you know, they got things out of order. But the court did as well. I mean, the court stated later on that the officers arrested Sutherland after he refused to speak to the New York police. That clearly is not true. The New York police didn't even come down to what later that evening. And then, furthermore, they said that he remained in custody on these charges for several weeks. I mean, that's not true either, right? The charges were dropped five days later. Well, the charges were dropped and it appears he was rearrested on New York charges maybe on October 22nd or 23rd. So to say he was in custody for several weeks. I think the detainer was lodged in the same days as his appearance in court. Well, would your position be that these facts, though inaccurate in the opinion, your main point would remain the same, and that is that he wasn't told words that could be inferred to be the magic words before the lie. That's exactly correct. And even though the district court may have made mistakes with the factual record, if it's remanded, vacated and remanded, and the district court goes back and finds all the facts in the light most favorable to the officers, it will reach the same conclusion. And we can see that from Judge Fulham's Rule 60 motion that those facts just aren't relevant, frankly. And this court, for the purposes of reviewing a grant of summary judgment, can look into the record and decide which facts is there a genuine dispute about, which material facts is there a genuine dispute about, and should do so, and should do so. I want to use my limited remaining time with the Court's permission just to address the issue of the Terry stop and whether the officers could justify this under Terry. It's pretty clear that even if they had some initial ---- When you say this, do you mean the initial ---- what are you talking about? The arrest. The arrest. I apologize. The arrest. It's pretty clear it can't be. Terry is a stop. It's not an arrest. Thank you, Your Honor. And finally, the last thing that I want to point out is that at this stage, the review of the officers, the denial of the officers' motion for qualified immunity, at this stage we're entitled to the benefit of the facts. And therefore, because Mr. Sutherland has maintained throughout the litigation that he never provided a false identification, the most this Court can do ---- But they claimed he did. Once again, aren't there just a lot of facts that really have to be sorted out before we can figure out whether this is even close to being something that should be resolved at summary judgment? No, I don't think there are. Or find out. I keep coming back to what was the timing of when the officers told Sutherland or in effect made it clear to him that he was under investigation for a crime in another state. If it was before, we all agree, that they could ---- and he lied thereafter about his identification, they could arrest him. If it was after, it doesn't fit under the Pennsylvania statute. But that requires a finding of fact which cannot be done at summary judgment. There's no dispute about those facts is the issue, though. It's undisputed that they did ---- And Mr. Boyle said there is a dispute about those facts. Respectfully, I don't know to which dispute he refers. We all agree that the officers said when they arrived at the club that they were assisting New York police in a death investigation. And we also all agree that they did not say that he was the subject of an official investigation of a violation of law until after he provided correct identity. And at no point thereafter did he provide false identity. So I don't see the factual dispute. There is no material factual dispute there. And whether or not Mr. Sutherland provided false identity is not material in any event because we don't even get to that issue unless we decide, yes, the officers did in fact inform ---- No, they said what happened, the officers, is that they were asking him about whether, you know, in effect he had his wallet. He said no. But then they saw a bulge in his back pocket. It turns out he did have a wallet. They said he eventually just ---- he eventually said, yes, I'm Sean Sutherland. Now, that's their point. And his testimony would be very different than that. And I'm just hung up on Rule 56. I don't understand how you can resolve this in summary judgment. We can resolve it because regardless of what Mr. Sutherland disputes about that encounter, the officers just haven't made out a claim, excuse me, haven't made out a violation of Pennsylvania law. And no reasonable person could conclude that they had. Okay. So what you're saying is there is literally nothing in the record that could indicate that the officers had told Sutherland before they arrested him or asked him for his identification and he lied to them and therefore arrested him, that there was nothing that indicated to him that he was the subject of an investigation in another state for a crime. That's exactly right. That's exactly right. And so there's nothing for a jury to decide here. It doesn't matter whether or not Mrs. Sutherland provided false identification. It only matters that the officers failed to inform him that he was the subject of an official investigation of a violation of law. And the Pennsylvania cases that we've cited in our 20J letter make it clear that those words mean something. It's not enough for an officer just to approach. They have to actually provide that subject with notice. I can see my time is up. Any other questions?  Thank you very much. Thank you. Mr. Boyle. Thank you. Your Honor, just briefly, I would point out that as Judge Ambrose has correctly stated, there are material issues of fact in this case that would preclude summary judgment. Tell me the best place that I should look to so that I can give you the relief that you seek with regard to the officers informing him before he lied to them that he was the subject of an investigation. Tell me the best place to look. The best place to look would be in the affidavit of probable cause supporting the arrest and the incident reports. And that's on what, 370? And that would require us to take the paragraphs out of what would appear to be, from every affidavit I've read as a lawyer, chronological order. That would indicate that the officers informed him that he was the subject of an official violation, of an official investigation of a violation of the law. After he lied to them? No. That they informed him he was the subject of the investigation, then he lied to them. Okay. So then I've got to take this out of chronological order, because that would require me to read paragraph 13 before paragraph 12. No. There are two separate points there, Your Honor. The first is they tell him that they're assisting in the death investigation. That's why they're talking to him. They also tell him that he's a person of interest. Those are not the same event. And even accepting that telling him he was a person of interest came after he said he was Sean Sutherland, which we don't accept and believe there is a material dispute of fact. But even accepting that as true, they told him they were assisting the New York detectives in a death investigation. That's why they were talking to him. I'm sorry. I'm looking at the affidavit you told me to look at. Am I looking at the wrong place? Craig-Cubbin? The Craig-Cubbin affidavit was in support of our response to plaintiff's motion for summary judgment. You want me to look somewhere else? I want you to look at the affidavit of probable cause in support of the Pennsylvania charges. I don't have that cite in front of me, Your Honor. It's okay. I have it in front of me. Okay. I have it in front of me. And it says that Sergeant Cotter stated we were assisting New York with an investigation and asked him his name. Sutherland stated he was Keith Davis. So that's the best place to look for having informed him that he was the subject of an investigation before the lie. Yes. I don't think that's the only place. I think it's the best. No, no. I asked you for the best. Yes, Your Honor. Thank you. Let me tell you what I have. I have on page 396. I have Cubbon stating that Sutherland was told this is when they approached him at approximately 5 p.m. Sutherland was told he was a person of interest in a New York homicide. That's paragraph 13. Okay? Yes, Your Honor. It doesn't say if he was told before or after. It says, next paragraph, Sutherland asked if there was a warrant against him in New York. I told him there was not. Well, we don't know because above that in paragraphs 8, 9, and 10, 7 starts, I went to the, this is Cubbon, I went to the club with Sergeant James Cotter and encountered Sutherland slash Davis because he claimed his name was Keith Davis. Right. Eight, Sutherland Davis told Sergeant Cotter his name was Keith Davis. Nine, Sutherland Davis provided me a date of birth, social security number, and address in Texas, all of which he claimed were his identifiers as Keith Davis. Ten, I asked Sutherland Davis for ID, and he claimed he had none. It looks like they're talking about identification, and we're still in 10. Only when you get down to paragraph 13 does it say Sutherland was told he was a person of interest in a New York homicide. It looks there as if, at least if you read it chronologically, that there is a problem with the timing, that he gave false identification before he was told, not after he was told, that he was a subject of investigation. I think the words person of interest, everyone can agree, would convey unequivocally that you are. No, no, no, I'm talking about the timing of it. Correct. All the prior paragraphs talk about who are you? Are you Keith Davis? Are you Sutherland? Then later on, he was told that he was a person of interest in a New York homicide. The best argument you have for you is we don't know what the timing is. But you could see how one could read this to think that he was asked about his identification and he lied about his identification before he was told he was a person of interest. That's one inference. It's not the only one, and it's not the only reasonable one. And then also looking at the appendix 368, Sutherland was advised that we were detectives of White Marsh Township and that we were requested by NYPD to assist him in a death sentence investigation. That might indicate, that might flip it, and that might indicate that he was told he was a person under investigation before asking for his identification. I don't know. I would agree with that position, Your Honor. And then it goes on the next page. The reason was that's why we were speaking with him. I asked him for some identification. That looks, that helps you. That looks as if he was told first that he was under investigation and then asked second about his identification. I can be honest with you. I can't tell you which is which here. The affidavit could have been drafted in a significantly more precise way to help you. It was an artfully drafted, Your Honor, no doubt. And, of course, there's no depths or anything here, right? That's correct. We had not begun discovery at this point. And, I mean, is there any other place in the record that you can point out to that you think that there was, it was, I thought you said on your opening that it was clear that they had told him beforehand that he was a person under investigation. And I would take that from the record that you've already identified and that I identified, Your Honor. I've got to tell you, in my rural Ohioese, it ain't clear. Well, that's a material dispute of fact, Your Honor, and it would preclude summary judgment. Thank the Court for your time. Thank you. Thank you to both counsel, Mr. Denny. I hope we have you here many, many times again. Thank you for those who have assisted him. I got my first start before the U.S. Court of Appeals for the D.C. Circuit in the same type of position as you, and that was what, when I walked out of court that day, I said to myself, this is what I want to do for the rest of my life. And so maybe someday you'll be up here and giving them heck. We were thrilled to be able to give Mr. Denny the opportunity, particularly since he's being shipped off to Fargo to clerk in the Eighth Circuit. For Kermit by? I'll actually be in Sioux Falls for Judge Warner. That's okay. Come back. We'd love to have you. Thank you. Thank you very much. All right.